UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WAYNE C., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 1:23-cv-00109-NT |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Child Disability Benefits and Supplemental Security Income appeal contends that the Administrative Law Judge (ALJ) erred in assessing his IQ test results and rejecting vocational evidence predicated on those results. *See* Plaintiff's Brief (ECF No. 9) at 7-20. I agree that the ALJ erred in assessing the vocational evidence and, on that basis, recommend that the Court vacate the Commissioner's decision and remand this case for further proceedings consistent with this decision. I need not and do not reach the Plaintiff's remaining arguments.

**I. Background**

The ALJ found, in relevant part, that the Plaintiff (1) had severe impairments of borderline intellectual functioning, anxiety disorder, depressive disorder, attention-deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder, *see* Record at 20; (2) retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, understand and remember simple instructions and tasks, work in two-hour blocks performing simple tasks over the course of a

1

normal workday and workweek, work with co-workers and supervisors but not the public, and adapt to simple changes, *see id.* at 24-25; (3) could perform jobs existing in significant numbers in the national economy, *see id.* at 30; and (4) therefore had not been disabled at any time from February 27, 2008, the effective onset date of disability for purposes of his Child Disability Benefits claim, through the date of the decision, March 30, 2022, *see id.* at 32. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-3, making that decision the final determination of the Commissioner, *see* 20 C.F.R. §§ 404.981, 416.1481.

## II.  Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### III. Discussion

The record contains the results of two IQ tests: one administered by Richard M. Levasseur, Ed.D., on May 15, 2007, when the Plaintiff was seventeen years old, assessing a full-scale IQ score of 76 (borderline range and 5th percentile), *see* Record at 597, 600, and one administered by agency examining consultant James R. Werrbach, Ph.D., on March 10, 2011, when the Plaintiff was twenty-one, assessing a full-scale IQ score of 54 ("moderately mentally retarded range"), *id*. at 605, 608. Both Drs. Levasseur and Werrbach characterized the test results as a valid reflection of the Plaintiff's cognitive functioning. *See id*. at 602, 607. Dr. Werrbach stated that, in view of the Plaintiff's intellectual disability and symptoms of ADHD and social anxiety, the "only situation" in which he could envision him "doing well . . . would be a worksite such as a sheltered workshop." *Id*. at 609.[1]

Agency nonexamining consultants Brian Stahl, Ph.D., and Ryan Haggarty, Ph.D., assessed the mental residual functional capacity (RFC) that the ALJ ultimately adopted. *Compare id*. at 24-25 *with id*. at 28-29, 140-41, 148-150. The vocational expert (VE) present at the Plaintiff's hearing testified that a person with that RFC could perform the representative jobs of Laundry Laborer, Housekeeping Cleaner, and Hand Packager. *See id*. at 57-58.

Following the hearing, the Plaintiff's counsel submitted a declaration of VE David W. Meuse noting that aptitudes for work include General Learning Ability and

---

[1] A "sheltered workshop" is a type of "work done under special conditions," for example, when a claimant "require[s] and receive[s] special assistance from other employees in performing . . . work" or is "permitted to work at a lower standard of productivity or efficiency than other employees." 20 C.F.R. §§ 404.1573(c), 416.973(c).

3

stating that, in VE Meuse's opinion, (1) "a level of ability in General Learning Ability (intelligence) as a result of a 54 Full Scale IQ, placing the person in the 0.1th percentile in this ability, would be very limiting," (2) "[a]lmost all competitive employment would require being at least above ten percent in this area," (3) "[a] person in the lowest 10 percent in this area would typically require a special accommodation such as a job coach or learning the job in a sheltered workshop setting rather than in competitive employment," (4) "someone in a fraction of the first percentile could not perform any job in the Dictionary of Occupational Titles," and (5) he disagreed with the opinion of the VE at hearing that the Plaintiff could perform the job of Hand Packager, which she formed without knowledge of his IQ scores. *Id*. at 386-87.

The ALJ found that the Plaintiff had a severe impairment of borderline intellectual functioning, *see id*. at 20, consistent with the 2007 Levasseur full-scale IQ score (borderline range and 5th percentile), *see id*. at 600. He deemed both the Werrbach and Meuse opinions unpersuasive, rejecting VE Meuse's opinions that a person with an IQ of 54 could not perform any work and that the Plaintiff specifically could not perform work as a Hand Packager. *See id*. at 29, 31. However, as the Plaintiff notes, *see* Plaintiff's Brief at 9, the ALJ did not acknowledge VE Meuse's statements implicating Dr. Levasseur's finding of an IQ of 76. The Plaintiff cites *Christin M. v. Saul*, No. 2:20-cv-00179-JAW, 2021 WL 1614324 (D. Me. Apr. 25, 2021) (rec. dec.), *aff'd*, 2021 WL 1894138 (D. Me. May 11, 2021), for the proposition that this oversight requires remand. *See* Plaintiff's Brief at 9. I agree.

4

In *Christin M.*, a VE identified three jobs that a person with the claimant's RFC could perform. *See Christin M.*, 2021 WL 1614324, at *3. The VE then testified on cross-examination that a person with the claimant's verbal IQ score of 76, in the 5th percentile, could not perform any of those jobs. *See id*. The ALJ rejected the VE's testimony concerning IQ scores because (1) the claimant's representative had failed "to make a nexus between the medical evidence and his assertion" that the claimant was "functioning in the bottom 10% of society," (2) "the extreme degree of impact of those scores asserted" by the claimant's counsel was "not reliably supported" and inconsistent with other evidence of record, including statements of psychological experts and activities of daily living, and (3) "it is Agency policy that aptitudes reflect the personal interests, natural abilities, and personality characteristics of job incumbents, rather than limitations or restrictions resulting from a medically determined impairment(s) as required for SSA's disability programs." *Id*. at *4 (cleaned up).

The Court agreed with the claimant that "the ALJ's rejection of material VE testimony" was "unsupported by substantial evidence," *id*. at *1, explaining that in the absence of any citation by the Commissioner to controlling caselaw "for the proposition that IQ scores cannot serve as proxies for aptitudes" or any showing "that agency policy forbids the consideration of verbal or other aptitudes," the Court's decision in *Jenkins v. Colvin*, No. 1:14-cv-285-DBH, 2015 WL 5093290 (D. Me. Aug. 28, 2015), was controlling and required remand, *id*. at *5-6; *Jenkins*, 2015 WL 5093290, at *2 (holding remand warranted when an ALJ erroneously reasoned that

5

a VE's testimony that a person with a posited RFC could perform certain jobs trumped the VE's testimony that a person with a posited IQ score could not).

The Commissioner contends, however, that the legal landscape changed in the wake of *Jenkins* and *Christin M.* when he issued an emergency message "unambiguously clarif[ying]" that the Social Security Administration (SSA) "does not consider . . . [a]ptitudes to identify the demands of work for disability adjudication in SSA's disability programs." Commissioner's Brief at 6 (quoting Social Security Emergency Message EM-21065 § (C)(2) (Oct. 29, 2021), https:// secure.ssa.gov/ apps10/ reference.nsf/ links/ 10292021113305AM (last visited Nov. 28, 2023) (emphasis omitted).[2] He cites Social Security 13-2p (SSR 13-2p) for the proposition that emergency messages such as EM-21065 "constitute agency policy that adjudicators must follow." *Id.* at 6 n.1.

However, SSR 13-2p—a ruling pertaining to the evaluation of whether drug addiction and alcoholism (DAA) is material to a determination of disability—cannot fairly be read to establish that emergency messages as a general rule constitute agency policy binding on adjudicators. *See* SSR 13-2p, 2013 WL 621536, at *1, *15 (Feb. 20, 2013). Indeed, the section cited by the Commissioner addresses how adjudicators should consider court decisions about DAA. *See id.* at *15. Accordingly, I conclude, as have other courts, that SSR 13-2p is inapplicable in cases (such as this

---

[2] The Commissioner notes that the emergency message explained that ratings for aptitude and temperament "'do not represent functional requirements for work because they reflect the personal interests, natural abilities, and personality characteristics of job incumbents rather than limitations or restrictions resulting from a medically determinable impairment(s), as is required for SSA's disability programs.'" Commissioner's Brief at 6 (quoting EM-21065 § (D)(1)).

6

one) that raise no question concerning the materiality of DAA to a disability determination.  *See, e.g.*, *Chad M. v. Kijakazi*, No. 3:21-cv-00268-TMB, 2022 WL 2914721, at *7 (D. Alaska July 25, 2022) (holding that SSR 13-2p is not binding when a claimant "is not claiming the ALJ improperly applied the drug and alcohol dependence factors"); *Montoya v. Kijakazi*, No. 1:20-cv-0152 JLT, 2021 WL 5356470, at *6 (E.D. Cal. Nov. 17, 2021) (same).

Because the Commissioner falls short of showing that EM-21065 constitutes binding agency policy, *Jenkins* and *Christin M.* remain controlling precedents, requiring reversal and remand in this case.

## IV.  Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: January 30, 2024

/s/ Karen Frink Wolf
United States Magistrate Judge