## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| WAYNE C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 1:23-cv-00109-NT |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE RECOMMENDED DECISION
## OF THE MAGISTRATE JUDGE

On January 30, 2024, the United States Magistrate Judge filed with the Court, with copies to the parties, her Recommended Decision. R. & R. (ECF No. 21). In it, the Magistrate Judge agreed with the Plaintiff that the Administrative Law Judge ("**ALJ**") erred in assessing the Plaintiff's IQ test results and vocational evidence, so she recommended that the Commissioner's decision be vacated and the case remanded. R. & R. at 1, 7. The Commissioner filed an objection to the Recommended Decision on February 13, 2024. Def.'s Objs. to R. & R. and Statement on Oral Arg. ("**Def.'s Objs.**") (ECF No. 22). The Plaintiff responded on February 27, 2024. Resp. to Comm'r's Obj. to R. & R. ("**Pl.'s Resp.**") (ECF No. 23).[1] I have reviewed and considered the Recommended Decision, together with the entire record, and I have made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision.

---

[1]     The Plaintiff also submitted a courtesy copy of a recent Connecticut case that he cited in his response. *See* ECF Nos. 24–25.

I agree with the Magistrate Judge's conclusion and write only to elaborate on the deficiency in the ALJ's decision that was identified by the Magistrate Judge. As the Commissioner correctly notes, "the arguments in this appeal flow from Plaintiff's IQ-test scores." Def.'s Objs. at 2. The Plaintiff asserts that IQ scores are relevant indicators for whether an individual has the aptitude to do a particular job. Pl.'s Resp. at 3–5. The Commissioner argues that under SSA guidance:

> [A]ptitudes reflect "the personal interests, natural abilities, and personality characteristics of job incumbents." EM-21065 ¶ C, C.1. They do not, therefore, speak to what is relevant to disability evaluation: the claimant's impairment-related limitations and abilities (that is, the claimant's residual functional capacity (RFC)), and the vocational factors of age, education and work experience.

Def.'s Objs. at 9.

The Record reflects three IQ scores. In 2001, the Plaintiff was assessed as having a full-scale intelligence quotient ("**FSIQ**") score of 87[2] in a test administered by Dr. Levasseur when the Plaintiff was 11 years old.[3] Administrative R. ("**R.**") at 598 (ECF No. 7). In 2007, Dr. Levasseur again assessed the Plaintiff, who was then 17, and found an FSIQ of 76. R. at 600. Then, in 2011, Dr. Werrbach conducted a test and

---

[2]    The ALJ mistakenly states that the Plaintiff's FSIQ score was 89 at least twice in his decision, but the Commissioner makes clear that those were scrivener's errors. Def.'s Objs. at 5 n.2 (citing Administrative R. ("**R.**") (ECF No. 7) at 21, 24).

[3]    The Magistrate Judge did not mention this first FSIQ score in her Recommended Decision. The Plaintiff posits that the Magistrate Judge "implicitly recognized that the ALJ was prohibited from relying on that score" because under Social Security Administration guidelines, a test taken when the Plaintiff was 11 years old would only have been valid for two years. Pl.'s Resp. at 2–3 (citing SSA POMS DI 24583.060(C)(1)). The SSA's Programs Operation Manual System ("**POMS**") explains: "IQ scores stabilize after age 16 and are generally considered current after that time." POMS DI 24583.060(C)(1), *available at* https://secure.ssa.gov/poms.nsf/lnx/0424583060. For children ages 7 to 16, IQ test results are considered current for two years if the IQ score is 40 or greater. *Id.*; *see also Julia C. v. Saul*, No. 2:18-cv-00334-DBH, 2019 WL 3855313, at *3 (D. Me. Aug. 16, 2019), *R. & R. adopted*, 2019 WL 5270199.

found that the Plaintiff had an FSIQ of 54. R. at 608. Although there is substantial evidence to support the ALJ's rejection of Dr. Werrbach's FSIQ score of 54, it does not appear that the ALJ meaningfully addressed Dr. Levasseur's second FSIQ result (76). *See* R. at 31. Rather the ALJ held the Plaintiff to the first FSIQ score of 87, even though it would not be considered a "current" score.[4] *See infra* note 3.

This is significant because Plaintiff's counsel submitted to the ALJ a post-hearing declaration of Vocational Expert ("**VE**") David W. Meuse, who opined that "[a]ptitudes are an important element in determining whether a particular individual has the necessary abilities to perform any particular job." R. at 386. VE Meuse further averred that aptitudes for work include General Learning Ability, and he stated:

> [A] level of ability in General Learning Ability (intelligence) as a result of a 54 Full Scale I.Q., placing the person in the 0.1th percentile in this ability would be very limiting. *Almost all competitive employment would require being at least above ten percent in this area. . . . A person in the lowest 10 percent in this area would typically require a special accommodation such as a job coach or learning the job in a sheltered workshop setting rather than in competitive employment.*

R. at 387 (emphasis added). As the Magistrate Judge noted, the Plaintiff's second FSIQ score (76) would put him in the 5th percentile for intelligence. R. & R. at 3 (citing R. at 597, 600). The Magistrate Judge then faulted the ALJ for not acknowledging "VE Meuse's statements implicating Dr. Levasseur's finding of an IQ of 76." R. & R. at 4.

---

[4]     The ALJ wrote that the Plaintiff was "if anything . . .  bound by the earlier finding of higher IQ" because the Plaintiff voluntarily dismissed his challenge to an earlier decision. R. at 31. The ALJ offered no authority for that conclusion, and the parties did not address this issue. The Commissioner does not defend the ALJ's decision to essentially use res judicata principles to treat the first FSIQ as binding, and I consider the argument waived.

Instead, the ALJ stated that, "with an IQ of 87 (C6F/2), the claimant is not within the lowest 10% (C15E)." R. at 31. Nor did the ALJ address VE Meuse's opinions about individuals in the lowest 10 percent in intelligence being precluded from almost all competitive employment.[5] Because the ALJ did not contend with Dr. Levasseur's 2011 FSIQ score of 76 and VE Meuse's opinions for individuals who fall within the lowest 10 percentile, I agree with the Magistrate Judge that the ALJ erred. I also adopt the Magistrate Judge's legal analysis and conclusions throughout the rest of her opinion and concur that the matter should be remanded.[6]

Accordingly, it is **ORDERED** that the Commissioner's objections are **OVERRULED** and that the Recommended Decision of the Magistrate Judge is hereby **ADOPTED**. It is further ordered that the Commissioner's decision is **VACATED** and that the case is **REMANDED** for further proceedings.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 14th day of March, 2024.

---

[5]     The vocational expert who testified at the hearing did not opine one way or the other on whether the lowest 10 percent of the population possess a negligible degree of aptitude. R. at 60–61. She stated only that 54 "is a very low IQ," which "would be very significant in the world of work" because "the majority of people . . . typically are significantly higher than 54." R. at 61. When the ALJ asked about individuals with a FSIQ of 87, she responded that she had "worked with numerous people who have [FSIQs] at 87 who do very well." R. at 61. She did not address a hypothetical person with an IQ score of 76 or who is in the 10th percentile for general learning ability or intelligence.

[6]     The Commissioner also took issue with the Magistrate Judge's dismissal of Emergency Message (EM) 21065, arguing that agency adjudicators are required to follow such emergency messages. Def.'s Objs. at 7–8. Without getting into the question of whether EM-21065 constitutes "binding agency policy," I am not persuaded that the ALJ here even considered the message given that his decision issued on March 30, 2022, and the Commissioner's citation to EM-21065 shows an effective date of December 5, 2023, twenty months later.